**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**JOE HENRY BANDY, III,**

**Petitioner,**

**v.**

**LOUIS STENDER,**

**Respondent.**

---

**Civil No. 00-2779 (JRT/SRN)**

**REPORT AND RECOMMENDATION**

Joe Henry Bandy, III, Minnesota Correctional Facility - Willow River/Moose Lake, 1000 Lake Shore Drive, Moose Lake, Minnesota, 55767-9449, Petitioner, pro se.

Michael K. Walz, Assistant County Attorney, Hennepin County, C-2000 Government Center, Minneapolis, MN, 55487, for Respondent.

---

**SUSAN RICHARD NELSON, United States Magistrate Judge**

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Joe Henry Bandy, III, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a return, (Docket No. 10), contending that the petition should be dismissed. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition must be **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

On May 10, 1999, a Hennepin County jury found Petitioner guilty of third degree criminal sexual conduct and "deprivation of parental rights." (Petition, [Docket No. 1], p. (2), ¶ 1, 2 and 4.) He was later sentenced to 178 months in prison. He is presently serving

FILED JUN 12 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

his sentence at the Minnesota Correctional Facility in Moose Lake, Minnesota.

The evidence presented at Petitioner's trial showed that on the evening of October 21, 1998, he visited a family who lived in Redwood Falls, Minnesota. One of the family members was a sixteen year-old girl, who became the victim in this case. The girl, who suffered some degree of mental retardation, lived with her father and step-mother, who were friends of Petitioner. At some point during the evening, the father and step-mother decided to leave their home and go to a bar. Petitioner was invited to meet them there, and he too left the home.

The victim later recounted that instead of going to the bar, Petitioner returned to the home and talked to her. Petitioner knew that the victim had wanted to visit her natural mother, who was living in New Ulm, Minnesota, and he asked her whether she would like him to drive her there. She said "yes." (Tr. 138.[1]) Petitioner took her to New Ulm, but did not leave her there with her mother. Instead, Petitioner continued to drive to Minneapolis, where he rented a hotel room. (Tr. 139-40.) When they were in the room, Petitioner gave the victim some alcohol, and said that he wanted her to have his baby. (Tr. 145.) She fell asleep, and when she woke up, she discovered that all of her clothes had been removed. (Tr. 146.)

The following day, Petitioner took the victim to his aunt's home. That night, Petitioner slept in the same bed as the victim. During the night he had intercourse with the victim, even though it hurt her and she said "no." (Tr. 149-50.) The victim tried to find a

---

[1] The transcript of Petitioner's trial is included in the present record as part of Respondent's Return. (Docket No. 11.) Citations to the trial transcript are identified by "Tr." followed by the page number of the transcript.

way to leave Petitioner, but she could not figure out how to escape from him and get to her mother's home. (Tr. 150-51.) Petitioner told the victim she could not return to her mother, and threatened to take her to Chicago. (Tr. 151.) Over the course of the next several days, Petitioner forced the victim to have sexual relations with him on several occasions. (Tr. 152; 156-57.)

Approximately a week after taking the victim to Minneapolis, Petitioner got lost while driving around in his car with her. He stopped and asked the police for directions, and the police spotted the victim lying with her head down on the front seat. After removing the victim from Petitioner's car and asking her several questions, the police discovered what had happened to her. Petitioner was arrested, and the victim was taken to a hospital for a sexual assault exam. Petitioner was later charged with one count of third degree criminal sexual assault, and one count of deprivation of parental rights.

At trial, Petitioner testified and acknowledged that he had taken the victim to Minneapolis. He claimed that they had stopped in New Ulm, but the victim's mother was not home, so she decided to go with him to Minneapolis. Petitioner further acknowledged that he took the victim to a hotel room in Minneapolis, but he denied having sex with her there. He also denied having sex with her on any other occasion while they were together in Minneapolis. (Tr. 461.) The jury rejected Petitioner's story, however, and found him guilty on both of the charges against him.

Following his conviction, Petitioner took an appeal to the Minnesota Court of Appeals. His appellate counsel filed a brief that presented three claims for relief -- (1) that Petitioner had been deprived of his constitutional right to a unanimous verdict as to each element of the charged offenses, (2) that there was insufficient evidence to support

Petitioner's conviction for criminal sexual conduct, and (3) that Petitioner should have been sentenced for only one of his convictions, because both of the charged offenses arose out of a single incident. (A copy of the brief filed by Petitioner's appellate counsel is included in the exhibits filed with Respondent's Return; [Docket No. 11].) Petitioner also filed his own separate "Pro Se Supplement Brief," (also included in Respondent's exhibits), in which he raised several additional claims. In his Pro Se Brief, Petitioner argued, inter alia, that (1) there was insufficient evidence to support his conviction for deprivation of parental rights; (2) the trial court abused its discretion by imposing a sentence that was an "upward departure" under state sentencing guidelines; (3) he received ineffective assistance of counsel at trial; and (4) the trial court allowed the state to introduce false evidence.

The Court of Appeals rejected all of the arguments raised by Petitioner's counsel and by Petitioner himself, and affirmed the convictions and sentence entered by the trial court. State v. Bandy, No. C9-99-1371 (Minn.App. 2000), 2000 WL 665626 (unpublished opinion).

Thereafter, Petitioner's attorney filed a "Petition For Review Of Decision Of Court Of Appeals," (a copy of which is included with Respondent's exhibits), asking the Minnesota Supreme Court to review the three claims raised in the attorney's brief to the Court of Appeals -- i.e., the unanimous verdict claim, the insufficiency of the evidence claim, and the separate sentencing claim.[2] Petitioner also filed his own separate "Pro Se Supplemental Petition For Review of Court of Appeals' Decision," asking the State Supreme Court to review his case. (A copy of Petitioner's pro se brief to the Supreme

---

[2] Petitioner's counsel actually argued only the unanimous verdict claim; the other two claims were mentioned, but not discussed, in the brief to the Supreme Court.

Court is included with Respondent's exhibits.) Petitioner's pro se brief is simply a list of objections to the Court of Appeals' summary of the evidence. Liberally construed, an insufficiency of the evidence claim might be found in the pro se brief, but no other legal claim for relief was presented there. There certainly is no reference to ineffective assistance of counsel, sentencing error, or other specific trial court errors in Petitioner's own brief.

The Minnesota Supreme Court declined to review the Court of Appeals' decision in a one-sentence order dated July 25, 2000.

On December 28, 2000, Petitioner filed his present application for federal habeas corpus relief, based on the following claims:

(1) there was insufficient evidence to support the jury's verdict;

(2) the trial court erred at sentencing by imposing an upward departure under the sentencing guidelines;

(3) Petitioner's trial counsel provided ineffective legal assistance; and

(4) Petitioner was denied due process because (a) the prosecution did not perform sufficient testing on some of the evidence, (namely certain pills that Petitioner gave the victim), (b) there was no probable cause for charging him with a crime, and (c) the prosecution knowingly introduced perjured testimony.[3]

For the reasons discussed below, the Court finds that three of Petitioner's four claims cannot properly be entertained here, because they have been procedurally defaulted. The one claim that can be entertained -- insufficiency of the evidence -- must

[3] Petitioner's fourth claim for relief also repeats ground two -- his objection to the upward departure at sentencing.

be rejected on the merits.

## II. DISCUSSION

### A. Grounds Two, Three and Four Have Been Procedurally Defaulted

Three of Petitioner's current claims for relief -- grounds two, three and four -- have not been fairly presented to the highest available state court, and must therefore be summarily denied on the grounds of procedural default.

#### (i) Applicable Legal Principles

It is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies for all of his claims. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners. O'Sullivan, 526 U.S. at 842; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose v. Lundy, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

"Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845 (emphasis added). In other words, a prisoner must fairly present all of his constitutional claims to the highest available state

court before seeking relief in federal court. State prisoners who have the right to seek discretionary review in the state's supreme court must exercise that right, and seek such review, in order to satisfy the exhaustion of state remedies requirement. Id. at 847.

When a prisoner has not exhausted his state court remedies with respect to some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim has been procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 750 (1991); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). See also O'Sullivan, 526 U.S. at 848 (petitioner's failure to present his federal habeas claims to the state supreme court in a timely manner results in a procedural default of those claims). A claim that has been procedurally defaulted will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman, 501 U.S. at 750.[4] The Supreme Court has summarized the rules governing

---

[4] The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996) (emphasis added), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995). In other words, the petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence which affirmatively demonstrates that he is, in fact, innocent of the crime for which he was convicted.

> "The actual innocence exception is concerned with claims of actual, not legal innocence. Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994). It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception. Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [Schlup, 513 U.S. at 324.] Examples of evidence which may establish factual innocence include credible

procedural default as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice".

Id.

**(ii) Petitioner's Procedural Default**

In this case, Petitioner's claims of sentencing error (ground two), ineffective assistance of counsel, (ground three), and denial of due process, (ground four), have been procedurally defaulted, because they were not raised before the Minnesota Supreme Court, and it is now too late to do so. Although Petitioner raised some of those claims in his pro se brief to the Minnesota Court of Appeals, not one of them was fairly presented to the State Supreme Court. Neither Petitioner nor his attorney asked the Supreme Court to consider Petitioner's current sentencing error claim, (the "upward departure" argument), his ineffective assistance of counsel claim, or the various due process claims listed at ground four of the present petition.[5]

---

> declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, see Schlup, 513 U.S. [at 324]... and exculpatory scientific evidence."

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996). For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999), quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998).

[5] It could be argued that Petitioner's attorney raised a sentencing error claim in his brief to the Supreme Court, because that brief includes a passing reference to the sentencing error claim that had been raised in the Court of Appeals. However, Petitioner's

The U.S. Supreme Court has specifically held, in O'Sullivan v. Boerckel, that a claim is not exhausted if it is presented only to a state intermediate appellate court, and not to the state's highest appellate court. In O'Sullivan, an Illinois prisoner raised numerous claims in his direct appeal to the Appellate Court of Illinois, which is an intermediate level appellate court comparable to the Minnesota Court of Appeals. The prisoner's conviction and sentence were affirmed by the intermediate appellate court, and the prisoner then filed a petition for further review in the Illinois Supreme Court. In that petition, however, the prisoner presented only three of the claims that had been raised in his initial appeal. After the Illinois Supreme Court denied the prisoner's request for further review, he filed a federal habeas corpus petition listing six grounds for relief. The federal district court found that the prisoner "had procedurally defaulted his first, second, and third claims by failing to include them in his petition for leave to appeal to the Illinois Supreme Court." 526 U.S. at 841. The Seventh Circuit reversed the district court, holding that the prisoner "was not required to present his claims in a petition for discretionary review to the Illinois Supreme Court to satisfy the exhaustion requirement." Id. at 842. The U.S. Supreme Court, however, reversed the Court of Appeals, and reinstated the district court's original decision.

---

attorney was arguing that the trial court erred by imposing separate sentences for both of Petitioner's convictions, which is different from the "upward departure" argument advanced by Petitioner here.

The Court further notes that all of Petitioner's sentencing error claims – as presented here and in the state courts – are based wholly on state sentencing law principles, rather than federal constitutional principles. Thus, Petitioner could not be granted habeas corpus relief on any of his sentencing error claims in any event. See Martin v. Solem, 801 F.2d 324, 331 (8th Cir. 1986) ("[w]ith the exception of due process claims, state prisoners' claims of error involving sentencing... are matters governed by state law that are not cognizable in federal habeas proceedings").

The Supreme Court held that claims presented only to an intermediate state appellate court, and not subsequently raised in an application for further review in the state's highest appellate court, are procedurally defaulted.

Based on O'Sullivan, this Court concludes that Petitioner has not satisfied the exhaustion of state court remedies requirement with respect to grounds two, three and four of his current petition, because those claims were raised only in the Minnesota Court of Appeals; they were not fairly presented to the Minnesota Supreme Court. Furthermore, it is now too late for Petitioner to return to the state courts, and attempt to raise his three unexhausted claims in some new state court proceeding. "Minnesota law provides that once the petitioner has directly appealed his sentence 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'" McCall, 114 F.3d at 757 citing State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976); Roby v. State, 531 N.W.2d 482, 484 (Minn. 1995). Because Petitioner's second, third and fourth claims for relief have not been fairly presented to the Minnesota Supreme Court, and it is now too late to seek further state court review, those three claims have been procedurally defaulted.

**(iii) Cause and Prejudice/Actual Innocence**

The only remaining question with regard to grounds two, three and four is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default. Petitioner has made no attempt to satisfy either the cause and prejudice standard, or the actual innocence standard, and the Court's own independent review of the record has disclosed no proper basis to excuse his procedural default.

In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the state's highest court in a procedurally proper manner. Coleman, 501 U.S. at 753 ("'cause' under the cause and prejudice test is something external to the petitioner, something that cannot fairly be attributed to him... [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available... or that some interference by officials made compliance impracticable'"), (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis in the original).

In this case, the Court finds no external cause for Petitioner's procedural default.[6] Petitioner obviously was aware of his defaulted claims when he petitioned for further review in the Minnesota Supreme Court; he had raised most of those claims in his own pro se brief to the Court of Appeals. He has shown no cause for not raising the defaulted claims in the State Supreme Court. Because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to consider whether he could satisfy the prejudice component. Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to overcome the procedural bar... we need not consider the issue of actual prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998) (same).

Finally, Petitioner has offered no new evidence proving that he must, in fact, be

[6] Petitioner could not claim ineffective assistance of appellate counsel as cause for his procedural default, because he has never presented such a claim in the state courts. Edwards v. Carpenter, 120 S.Ct. 1587, 1591 (2000) ("'a claim of ineffective assistance'... must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default'"), quoting Murray v. Carrier, 477 U.S. at 489.

innocent of the crimes for which he was convicted. (See discussion at n. 4, supra.) Therefore, he cannot overcome his procedural default by way of the actual innocence exception.

### B. Ground One (Insufficiency of the Evidence) Is Non-Meritorious

The one claim that Petitioner might have at least arguably presented to the Minnesota Supreme Court -- i.e., that there was insufficient evidence to support his convictions – must be denied on the merits.

#### (i) Standard of Review

The standard of review for this claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in the original). Under this standard, the Court does not re-weigh the evidence to see whether it agrees with the jury's assessment of it; nor does the Court consider whether the evidence could have resulted in acquittal. Rather, the Court examines the record to see whether any rational trier of fact could have found the defendant guilty based on the evidence presented at trial. If conflicting inferences could be drawn from the evidence, then the Court must assume that the trier of fact resolved those conflicts in favor of the prosecution, and the Court must "defer to that resolution." Id. at 326.

As explained by our Court of Appeals:

> "This court must view the evidence in the light most favorable to the government and sustain the verdict if it is supported by substantial evidence... [T] he government must be given the benefit of all inferences that may logically be drawn from the evidence. It is not necessary that the

> evidence exclude every reasonable hypothesis except guilt; instead, the evidence is simply sufficient if it will convince a trier of fact beyond a reasonable doubt that the defendant is guilty. This court will not disturb a conviction if the evidence rationally supports two conflicting hypotheses. Each of the elements of the crime charged may be proven by circumstantial evidence, as well as by direct evidence. And finally, this court must keep in mind that the standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly."

Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996).

**(ii) Sufficiency of the Evidence In Petitioner's Case**

In the present case, a rational trier of fact could have easily found Petitioner guilty on both of the charges against him based on the evidence presented at his trial. Indeed, the victim's testimony alone provided more than enough evidence to support both of Petitioner's convictions.

To find Petitioner guilty on the criminal sexual conduct charge, the jury needed to find only that (a) Petitioner engaged in sexual penetration with the victim, and (b) Petitioner used force or coercion to accomplish such penetration. Minn.Stat. § 609.344, subd. 1(c). The victim's testimony alone provided ample evidence in support of both elements of the crime. She testified that Petitioner put his penis into her vagina on several occasions while they were together in Minneapolis. (Tr. 152-53, 201.[7]) Her testimony also showed that Petitioner used force or coercion to accomplish his sexual penetration. Describing one act of intercourse, the victim said: "He stuck his penis in me and then it hurt and I said 'no.' I kept saying 'no' and 'ouch', and it was like hurting and finally he quit...." (Tr. 150.) This testimony certainly would allow a reasonable trier of fact to find that Petitioner used force

[7] The victim also testified that she performed oral sex on Petitioner on at least one occasion. (Tr. 202.)

or coercion to accomplish sexual penetration. The jury also heard the following testimony from the victim:

"Q. You said he [Petitioner] was not your boyfriend?

A. No.

Q. But you said you had sex with him almost every day?

A. Yeah.

Q. I'm asking why?

A. Because he wanted it and I didn't.

Q. You didn't want to but did you tell him you didn't want to?

A. Yes, but he said, 'so, I don't care. I do.'"

(Tr. 157.)

Petitioner contends that the jury should have rejected the victim's testimony, and accepted his own version of what happened. That, however, is not a viable habeas corpus claim. The credibility of the victim and Petitioner were matters for the jury to weigh and decide, based on their own first-hand observations of the two witnesses' words and demeanors, as well as the rest of the evidence presented at trial. As the Minnesota Court of Appeals correctly noted, "[e]ven when the complainant's testimony contains inconsistencies, the jury has the exclusive function of weighing witness credibility at trial." Bandy, 2000 WL 665626 at *4 (emphasis added). A federal habeas court, with only a lifeless typewritten transcript to consider, cannot reject a jury's credibility determinations and substitute its own.

There is also ample evidence supporting the Petitioner's conviction for "Depriving Another of Custodial or Parental Rights" in violation of Minn.Stat. § 609.26 subd. 1(8).

Under that statute, a person commits a felony if he or she intentionally "causes or contributes to a child being a runaway as defined in section 260.007, subd. 20, and is at least 18 years old and more than 24 months older than the child." Minn.Stat. § 260C.007 subd. 20 defines a "runaway" as "an unmarried child under the age of 18 years who is absent from the home of a parent or other lawful placement without the consent of the parent, guardian, or lawful custodian."

In light of the evidence presented at trial, it is difficult to imagine how the jury could have not convicted Petitioner for his second offense. Petitioner does not deny that the victim was a "runaway" -- i.e., that she was an unmarried child under the age of 18 who was away from home without the consent of her parents. Nor does Petitioner deny that he was over the age of 18, and more than 24 months older than the victim. (In fact, he was 35 years old, and nearly 19 years older than the victim). Thus, Petitioner's only conceivable argument is that he did not "cause or contribute" to the victim being a runaway.

The evidence clearly shows, however, that even if Petitioner did not cause the victim to leave her home, he certainly did contribute to her being a runaway for a week. He gave her a ride away from her home in Redwood Falls; he took her to Minneapolis; he put her up in a hotel room on her first night away from home and provided her lodging at other locations on her remaining nights away; he provided her food, (either directly or indirectly); he made no attempt to help the victim get back to her home; and he made no effort to contact the victim's parents, or the authorities, to advise them of the victim's whereabouts. Given such evidence, a rational trier of fact certainly could have found that Petitioner contributed to the victim being a runaway.

As the prosecutor pointed out during her closing argument –

> "This is not a kidnapping charge. There's no accusation that [Petitioner] held [the victim] against her will or forced her from her home. She was a runaway. It's just that he helped her to be a runaway. He drove her from the city where she lived, he brought her to Minneapolis, a city where she was not familiar with [sic] and she did not know people who lived here, he gave her shelter, and food, and all the necessities for an entire week. He provided those. She never spent a night away from him. His contributions to her being a runaway are fundamental to her remaining a runaway. The week she was here [in Minneapolis], she could not have remained [by] herself without him."

(Tr. 590.)

The evidence presented at Petitioner's trial amply supported the prosecutor's remarks -- and the jury's verdict on the deprivation of parental rights charge.[8]

## III. CONCLUSION

For the reasons discussed above, the Court finds that Petitioner is not entitled to a writ of habeas corpus. He is not entitled to relief on his first claim, because he has not met the heavy burden of showing that no rational trier of fact could have convicted him on the basis of the evidence presented at his trial. His remaining claims, (grounds two, three and four of the petition), have been procedurally defaulted, because he never fairly presented any of those claims to Minnesota's highest state court, (as required by O'Sullivan), and it is now too late for him to do so. It will therefore be recommended that the instant petition be dismissed with prejudice.

---

[8] Petitioner apparently believes that his attorney could have advanced a defense to the deprivation of parental right charge based on Minn.Stat. § 609.26 subd. 2.(1). Under that statute, "[i]t is an affirmative defense if a person charged under [the deprivation of parental rights statute]... proves that... the person reasonably believed the action taken was necessary to protect the child from physical or sexual assault or substantial emotional harm." No such defense was actually presented at trial, however, so the jury did not have to make a finding on whether Petitioner was trying to protect the victim from a physical or sexual assault or "substantial emotional harm."

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be **DISMISSED WITH PREJUDICE**.

Dated: June 12, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.